**FILED**

December 21, 2015

TN COURT OF
WORKERS' COMPENSATION
CLAIMS

Time: 2:10 PM



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT KINGSPORT

| | |
|---|---|
| Jayetta Gibson      Employee, | ) ) | Docket No.: 2015-02-0044 |

Jayetta Gibson    )    Docket No.: 2015-02-0044
Employee,    )
v.    )    State File Number: 71577/2014
Claiborne County Board of Education    )
Employer,    )    Judge Brian K. Addington
And    )
TN Risk Mgt. Trust    )
Insurance Carrier,    )
And    )
Second Injury Fund.    )
   )

## EXPEDITED HEARING ORDER DENYING MEDICAL BENEFITS AND GRANTING TEMPORARY DISABILITY BENEFITS

This cause came to be heard on December 7, 2015, for an Expedited Hearing. The present focus of this case is Ms. Gibson's entitlement to temporary disability benefits and medical benefits following a fall at work.[1] For the reasons set forth below, the Court finds Ms. Gibson's injury is compensable and grants her temporary disability benefits at this time. Her request for medical benefits is denied at this time.

### History of Claim

Employee, Jayetta Gibson, is a seventy-seven-year-old resident of Claiborne County, Tennessee. (T.R. 1 at 1.) She worked for over thirty years as a janitor and cafeteria assistant for the Claiborne County Board of Education. (Ex. 1 at 2.) On August 26, 2014, Ms. Gibson suffered a fall at work after a chair she carried caught on a door. *Id.* Ms. Gibson landed on her left side, hitting her shoulder, hip, and leg. *Id.*

Prior to the injury in question, Ms. Gibson sought medical treatment for arthritis in both knees from Dr. Paul Becker, an orthopedic surgeon with a subspecialty in sports medicine. (Ex. 3 at 2-3, 6, 47-48.) Dr. Becker performed a total right-knee replacement

---

[1] Additional information regarding the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an Appendix.

from which Ms. Gibson suffered significant recovery issues. *Id.* at 33-34. Dr. Becker also recommended a left total knee replacement, but in light of Ms. Gibson's poor post-operative recovery from the right-knee surgery, he elected not to perform the left-knee replacement. *Id.* at 33-35.

Following the fall at work, Claiborne County did not present Ms. Gibson a panel of physicians but provided medical treatment with Dr. Becker. Dr. Becker treated Ms. Gibson conservatively due to his concerns about her recovery from her prior surgery. *Id.* He placed her at maximum medical improvement (MMI) on December 15, 2014, and opined she suffered a one percent impairment to her body as a whole due to a contusion and motion defects. (Ex. 5 at 13.) He also assigned permanent work restrictions of limited standing and no lifting over ten pounds. *Id.* Ms. Gibson testified Claiborne County was unable to accommodate her restrictions.

On January 12, 2015, Dr. Becker recommended a medial unloader brace. *Id.* at 20. He measured Ms. Gibson for the brace, wrote a prescription, and recorded in his notes that he would try to get workers' compensation to approve it. *Id.* at 20, 25. In his January 30, 2015 notes, Dr. Becker observed Ms. Gibson struggled with her knee because she did not have the brace. *Id.* at 26. Dr. Becker responded to a causation question from the worker's compensation carrier on February 10, 2015, but his opinion was unclear as to whether the need for the unloader brace was due to Ms. Gibson's pre-existing osteoarthritis or her fall at work. *Id.* at 37. On April 28, 2015, Dr. Becker provided Ms. Gibson a warrior-type brace. *Id.* at 31. He noted, "I told her that she did not get approved for a lateral unloader brace because this is for osteoarthritis but I can give her a brace to help support her knee from the contusion which will be a warrior type brace." *Id.*

On January 30, 2015, Ms. Gibson returned to Dr. Becker, and he opined Ms. Gibson suffered pre-existing, significant osteoarthritis. He noted, "I think the fall did aggravate it but I did not think it caused more than 51% of her problems."

On February 27, 2015, Ms. Gibson saw her primary care provider, Dr. John Robertson. Dr. Robertson noted Ms. Gibson has suffered from anxiety for years and gradually worsened. (Ex. 5 at 65.)

On November 11, 2015, the parties took Dr. Becker's deposition. Concerning the brace in question, Dr. Becker testified as follows:

> So down the road, I was feeling like a brace would help her condition and the brace that I was requesting is an unloader brace, but again, the chicken before the egg. That brace is designed for osteoarthritis. It unloads the compartment especially in someone with varus alignment so the brace-- ordering the brace is kind of a cloudy or gray area whether the arthritis was

2

already there before or after so I felt it would be difficult to get it approved and it was so the other braces that are double upright braces, those are for more ligament stability, that was offered to her but it was not helpful.

(Ex. 3 at 16.)

Concerning aggravation of Ms. Gibson's pre-existing osteoarthritis, Dr. Becker stated in his deposition:

Well, the problems which I should be stating more correctly is it didn't cause her osteoarthritis. So the whole story I'm trying to get relayed . . . pretty much at this point was that her fall did not produce the arthritis. I do think that she had some increased symptoms but it didn't produce all of them.

*Id.* at 14.

Dr. Becker confirmed Ms. Gibson suffered increased symptoms after the fall, but she did not suffer any new traumatic injury. *Id.* at 15, 38. Dr. Becker also noted that a CT scan indicated Ms. Gibson had a five-millimeter loose body in her knee, but that the loose body was not related to trauma. *Id.* at 35-39.

On May 30, 2015, Ms. Gibson underwent a one-time examination by Dr. C.M. Salekin at her attorney's request. (Ex. 4.) Dr. Salekin is a neurologist and also practices occupational medicine. *Id.* at 10. Concerning Ms. Gibson's left leg, he noted she reached MMI on May 30, 2015, and suffered a four percent impairment to the body as a whole. *Id.* at 4. In his summary, he noted the CT scan indicated a large joint effusion, a five millimeter loose body in the intercondylar notch secondary to contusion and other degenerative changes. *Id.* at 2. He opined Ms. Gibson was unable to work from August 26, 2014, until May 30, 2015, and had permanent work restrictions of limited standing and no lifting over five pounds. *Id.* at 4-5.

Ms. Gibson testified she continues to have problems with her shoulder and hip. She cannot lift her left arm above her shoulder and cannot walk without crutches. She has been depressed since the accident, but admitted she suffered from depression prior to the accident. She has constant pain and cries all the time. She cannot perform the ordinary tasks she normally did before the fall. Both Ms. Gibson and her daughter, Leisa Carter, testified that her mental condition had not prevented her from working prior to the incident.

Ms. Gibson filed an amended Petition for Benefit Determination on May 26, 2015, seeking medical and temporary disability benefits. The parties did not resolve the disputed issues through mediation and the Mediating Specialist filed the Dispute

3

Certification Notice on June 24, 2015. Ms. Gibson filed a Request for Expedited Hearing, and the Court conducted an Expedited Hearing on December 7, 2015.

At the Expedited Hearing, the parties stipulated that Ms. Gibson suffered a compensable injury on August 26, 2014, and that her compensation rate was $245.89. After Ms. Gibson testified, Claiborne County agreed to provide panels of physicians for her alleged left shoulder and hip injuries. The parties informed the Court that the remaining issues were Ms. Gibson's entitlement to the unloader brace, medical benefits for her alleged mental injury, and temporary disability benefits. After the conclusion of the proof, and at the end of closing argument, Ms. Gibson attempted to add a new issue for a panel of physicians for her left leg, citing dissatisfaction with her left-leg treatment. Claiborne County objected to the new issue. Since Ms. Gibson did not raise the issue until after her presentation of evidence, and the parties did not put on any proof about this issue, the Court refuses to consider it.

Ms. Gibson contended she was entitled to the unloader brace as prescribed by Dr. Becker. She argued Claiborne County should have submitted the prescription to Utilization Review if it did not want to provide the brace. She asserted Dr. Becker stated that the accident aggravated her pre-existing osteoarthritis, so Claiborne County should approve the unloader brace. Ms. Gibson further asserted that she suffered both an aggravation of her pre-existing depression and is in need of an evaluation of the same. She pointed out that, although she suffered depression prior to the accident, it had not kept her from working. Ms. Gibson further claimed she is entitled to temporary disability benefits because she is not at MMI for all of her injuries. In the alternative, she argued that she is entitled to temporary benefits according to Tennessee Code Annotated section 50-6-234(b) (2014).

Claiborne County contended that Ms. Gibson was not entitled to the unloader brace because Dr. Becker opined that the brace was required for Ms. Gibson's pre-existing condition rather than the injury she suffered on August 26, 2014. Further, Claiborne County argued Ms. Gibson was not entitled to any temporary disability benefits because it paid her temporary benefits until Dr. Becker placed Ms. Gibson at MMI on December 15, 2014. Claiborne County contended Ms. Gibson was not entitled to treatment for a mental condition because no medical expert opined a need for such treatment.

### Finding of Fact and Conclusions of Law

The Workers' Compensation Law shall not be remedially or liberally construed in favor of either party but shall be construed fairly, impartially and in accordance with basic principles of statutory construction favoring neither the employee nor employer. Tenn. Code Ann. § 50-6-116 (2014). The employee in a workers' compensation claim has the burden of proof on all essential elements of a claim. *Tindall v. Waring Park*

4

*Ass'n,* 725 S.W.2d 935, 937 (Tenn. 1987); *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015).

An employee need not prove every element of his or her claim by a preponderance of the evidence in order to obtain relief at an expedited hearing. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). At an expedited hearing, an employee has the burden to come forward with sufficient evidence from which the trial court can determine that the employee is likely to prevail at a hearing on the merits. *Id.*

An employer shall furnish free of charge medical apparatus as ordered by the attending physician made reasonably necessary due to a work injury. Tenn. Code. Ann. § 50-6-204(a)(1)(A) (2014). In this case, the question is whether the unloader brace was made necessary by Ms. Gibson's work injury.

It is uncontroverted that Ms. Gibson needed a total left-knee replacement prior to the August 26, 2014 incident. Dr. Becker stated the unloader brace was for her osteoarthritis and for that reason Claiborne County did not approve it. Dr. Becker stated the work injury aggravated her osteoarthritis, but he also stated that Ms. Gibson's symptoms were not primarily related to her work injury. Dr. Becker did not state that Ms. Gibson's fall at work advanced her pre-existing osteoarthritis. He opined she suffered increased symptoms, but her fall at work did not primarily cause these symptoms. Dr. Salekin opined the loose body in Ms. Gibson's knee was due to her contusion suffered during the fall at work.

Dr. Becker is the treating physician, although Ms. Gibson did not select him from a panel of physicians. Dr. Becker is an orthopedic surgeon with a subspecialty in sports medicine. Dr. Salekin is a neurologist and practices in occupational medicine. Dr. Becker saw Ms. Gibson numerous times prior to and subsequent to the accident. Dr. Salekin examined Ms. Becker on one occasion. The Court gives more weight to the opinion of Dr. Becker in this matter.

Considering all the evidence presented, Ms. Gibson has not presented a preponderance of evidence sufficient to prove to a reasonable degree of medical certainty that she suffered a compensable aggravation of her pre-existing osteoarthritis. She is unlikely to succeed at a hearing on the merits. Therefore, her request for the unloader brace is denied.

Ms. Gibson requests medical benefits for an alleged mental injury. She and her daughter testified to the mental problems she suffered following the incident at work. However, Tennessee Code Annotated section 50-6-204(h) (2014) limits psychological or psychiatric services to those ordered by authorized physicians. In this matter, no

physician has recommended treatment for Ms. Gibson's alleged mental condition as a result of the August 26, 2014 incident. Dr. Robertson did note her anxiety, but did not opine it was related to the work incident. The Court finds Ms. Gibson failed to present sufficient evidence that she is likely to succeed at a hearing on the merits regarding her alleged mental injury. Therefore, her request for treatment of her alleged mental condition is denied.

The final issue is Ms. Gibson's entitlement to temporary disability benefits. As stated previously, this Court places more weight on the opinion of Dr. Becker, as opposed to that of Dr. Salekin. Dr. Becker placed Ms. Gibson at MMI for her left leg contusion on December 15, 2014. Claiborne County paid Ms. Gibson temporary disability benefits until December 15, 2015. Dr. Becker provided a one percent whole-body impairment rating.

At the Expedited Hearing, Claiborne County did not contest that Ms. Gibson suffered a compensable knee contusion. Tennessee Code Annotated 50-6-234(b) (2014) calls for the continuance of temporary benefits up to the lesser of sixty days or the value of the employee's medical impairment when an employee reaches MMI and the compensability of the injury is not a question. These payments continue until an employee accepts or rejects a job offer. *Id.* Claiborne County has not offered Ms. Gibson work. The employer receives a credit against any permanent award in the amount of any benefits paid pursuant to this subsection. *Id.* A one percent impairment entitles an employee to at least four and a half weeks of permanent partial disability benefits. It appears to the Court that Ms. Gibson is likely to succeed at a hearing on the merits of this issue. Ms. Gibson is entitled to four and a half weeks of benefits at $245.89 per week, or $1,106.51. Claiborne County shall receive a credit towards permanent disability in said amount.

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Gibson's request for an unloader brace is denied.

2. Ms. Gibson's request for a panel of psychiatric treatment is denied.

3. Ms. Gibson is entitled to $1,106.51 in temporary disability benefits, for which Claiborne County shall receive a credit towards permanent disability.

4. This matter is set for an Initial (Status) Hearing on January 26, 2016, at 3:00 p.m. Eastern.

5. **Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days**

from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2014). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 21st day of December, 2015.**

_____

**Judge Brian K. Addington**
**Court of Workers' Compensation Claims**

Initial (Scheduling) Hearing:

A Scheduling Hearing has been set with **Judge Brian K. Addington, Court of Workers' Compensation Claims. You must call 865-594-6538 or toll-free at 855-543-5044 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Eastern Time (CT).**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

Exhibits:
1. Affidavit of Jayetta Gibson, November 24, 2015
2. Affidavit of Jayetta Gibson, April 1, 2015 (For Identification Only)
3. Medical records and Deposition of Dr. Paul Becker
4. C-32 and medical records of Dr. C.M. Salekin
5. Collective exhibit of medical records
6. Ms. Gibson's acknowledgement of receiving a brace

Technical record:[2]
1. Amended Petition for Benefit Determination, May 26, 2015
2. Dispute Certification Notice, June 24, 2015
3. Request for Expedited Hearing, April 24, 2015

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 21st day of December, 2015.

| Name | Certified Mail | First Class Mail | Via Fax | Fax Number | Via Email | Sent To: |
|------|----------------|------------------|---------|------------|-----------|----------|
| David Dunaway, Employee's Counsel | | | | | X | dhdunaway@aol.com |
| Ashley Griffith, Employer's Counsel | | | | | X | agriffith@wimberlylawson.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

---

[2] The Court did not consider attachments to the above filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in the above filings or any attachments to them as allegations unless established by the evidence.

9